IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ELIZABETH E. HARDESTY,

        Plaintiff,                        No. CIV S-05-0891 DFL PAN

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.                    FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court recommends Plaintiff's motion for summary judgment be denied; the Commissioner's cross motion for summary judgment be denied; and that this matter be remanded for further proceedings consistent with this order.

/////

/////

/////

/////

1

I. Factual and Procedural Background

        In a decision dated December 15, 2004, the ALJ determined Plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. The ALJ found Plaintiff has severe impairments of chronic back pain due to a history of lumbar strain, arthralgias, and questionable mild degenerative osteoarthritis of the right shoulder, status post arthroscopic surgery, but that these impairments do not meet or medically equal a listed impairment; Plaintiff's allegation that she is unable to perform all regular, sustained work activity is not credible; Plaintiff has the residual functional capacity to stand, walk, and sit for at least six hours in an eight hour period with

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

regular break opportunities, as well as lift 40 to 50 pounds occasionally, and 20 pounds frequently; Plaintiff's impairments do not prevent her from performing her past relevant work as generally performed in the national economy; a significant number of jobs exist in the national economy that Plaintiff is able to perform; and Plaintiff is not disabled. Administrative Transcript ("AT") 25-26.

Plaintiff contends that the ALJ committed numerous errors. First, Plaintiff argues that the ALJ erred by failing to give proper weight to the medical opinion of Plaintiff's treating physician. Second, Plaintiff contends that the ALJ erred by failing to find Plaintiff's fibromyalgia to be a severe impairment. Finally, Plaintiff states that the ALJ's conclusion that Plaintiff's complaints were less than fully credible was in error.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

    a. The ALJ's Weighing of the Medical Evidence in this Case was not in Error.

    The ALJ found Plaintiff to suffer from multiple impairments. The ALJ did not find that Plaintiff suffered from the severe impairment of fibromyalgia. AT 19. In reaching this conclusion, the ALJ relied upon the opinions of Plaintiff's examining physicians as well as nonexamining doctors with the State Agency. AT 21. This weighing of the medical evidence was not in error.

    The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

    To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In

any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

Dr. McIntire, a board certified neurologist, examined Plaintiff on November 16, 2002.  AT 114-18.  In his examination, Dr. McIntire found that Plaintiff suffered discomfort on range of motion testing of the right shoulder, but that her range of motion was normal.  AT 117.  In addition, he noted a slightly diminished range of motion in Plaintiff's back.  Id.  Based upon these findings, Dr. McIntire concluded that Plaintiff was precluded only from heavy lifting, limiting her to lifting 40 pounds occasionally and 20 pounds frequently.  Id.  Dr. McIntire noted no additional functional limitations.  AT 117-18.

This opinion is almost identical to the residual functional capacity put forth by the ALJ.  AT 25.  The ALJ expressly noted that he was giving Dr. McIntire's opinion equal weight with the opinion of care providers at Sierra Clinic.  AT 21.  In reaching this conclusion, the ALJ stated that the personnel who treated Plaintiff at Sierra Clinic were not accepted sources qualified to give a preferential medical opinion under the regulations.  Id.  In addition, the ALJ noted the lack of medical evidence supporting the opinion of clinicians at Sierra Clinic.  Id.   The ALJ's conclusion in this regard were not in error.

Plaintiff reported to Sierra Clinic on December 30, 2003.  AT 166, 216.  Over the next 11 months, various professionals at Sierra Clinic saw Plaintiff no fewer than 13 times, AT 193-218, with an additional referral to physical therapy, AT 212.   Plaintiff was initially diagnosed with various neck and back problems as well as "possible fibromyalgia" and "probable depression."  AT 167.  On her last comprehensive visit, the diagnosis was "fibromyalgia" and "low back pain, sciatica."  AT 196.

/////

1    The medical professional making these diagnoses was Ms. Martin, a registered
2 nurse (RN) and family nurse practitioner (FNP).  With the exception of four visits with Ms. Sale,
3 a licensed clinical social worker (LCSW) in June and July 2003, AT 197, 202, 204, 205, Ms.
4 Martin was responsible for all of Plaintiff's care at Sierra Clinic.  There is no evidence in the
5 record that any other medical professional participated in Plaintiff's care.
6    Ms. Martin diagnosed Plaintiff with fibromyalgia.  In evaluating her condition,
7 Ms. Martin opined that Plaintiff was limited to less than two hours sitting, standing, or walking
8 with no more than 20 continuous minutes.  AT 221.  In addition, Ms. Martin precluded Plaintiff
9 from lifting any weight.  AT 221, 222.  This evaluation appears on a Fibromyalgia Residual
10 Functional Capacity Questionnaire completed by Ms. Martin on October 28, 2004.  AT 219-222.
11    In assessing medical opinions, the ALJ is obligated to give greater weight to the
12 medical opinions of treating and examining physicians over those from nurses and social
13 workers.  Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Medical opinions are
14 statements from physicians and psychologists or other acceptable medical sources that reflect
15 judgments about the nature and severity of your impairment(s), including your symptoms,
16 diagnosis and prognosis, what you can still do despite impairment(s), and your physical and
17 mental restrictions."  20 C.F.R. § 416.927(a)(2).  Registered nurses, family nurse practitioners,
18 and licensed clinical social workers are not acceptable medical sources.  20 C.F.R. § 416.913(a).
19 Rather, they are "other sources" who can provide evidence that an ALJ may consider in reaching
20 his findings.  Id. at (d).
21    The opinions of other sources are not considered medical opinions that must
22 receive preference from the ALJ in his determination of disability.  The ALJ is free to reject the
23 medical opinion of other sources by offering reasons germane to that particular witness.  See
24 Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ's finding that Ms. Martin was not
25 an acceptable medical source when compared to Dr. McIntire is such a reason.  Id.  Reliance
26 upon the medical opinion of an examining physician over lay testimony is not error.  Vincent v.

6

1  Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)("The ALJ properly discounted lay testimony that
2  conflicted with the available medical evidence.")

3        A physician from Sierra Clinic does endorse Ms. Martin's assessment of
4  Plaintiff's functional limitations.  Dr. Van Houten's signature appears on the bottom of the
5  Fibromyalgia Residual Functional Capacity Questionnaire contained in the record.  AT 222.
6  However, given the medical evidence from Sierra Clinic, Dr. Van Houten can hardly be
7  considered Plaintiff's treating physician whose opinion is entitled to preferential weight.

8        A treating source is an acceptable medical source who has provided "medical
9  treatment or evaluation and who has, or has had, an ongoing treatment relationship with [a
10 plaintiff]."  20 C.F.R. § 416.902.  There is no indication that Dr. Van Houten ever saw Plaintiff,
11 let alone examined her, oversaw her care, consulted with Ms. Martin or Ms. Sale about her
12 treatment, or performed any detailed review of her records.  See Benton ex rel. Benton v.
13 Barnhart, 331 F.3d 1030, 1036 (9th Cir. 2003)(noting that forming a treating relationship requires
14 the acceptable medical source to have seen a patient "with a frequency consistent with accepted
15 medical practice for the type of treatment and/or evaluation required" for a particular medical
16 condition); Gomez, 74 F.3d at 971 (granting nurse practitioner's opinion the weight of a treating
17 source when it was formed in consultation with physician)(superceded by change in regulation).

18       Nor can it be said that Dr. Van Houten's signature on Ms. Martin's report
19 transformed her opinion into acceptable medical evidence.  Formerly, nurse practitioner's
20 working in conjunction with physicians comprised an interdisciplinary team whose opinion could
21 be entitled to the weight given other acceptable medical sources.  See 20 C.F.R. §
22 416.913(a)(6)(1996).  Such a provision no longer exists in the regulations.  In addition, there is
23 no evidence indicating that Ms. Martin was closely supervised by Dr. Van Houten or acting as
24 his agent.  See Gomez, 74 F.3d at 971.

25       Even if Dr. Van Houten was Plaintiff's treating physician, his opinion would not
26 necessarily be entitled to greater weight than the opinion of Dr. McIntire.  Dr. Van Houten's

7

opinion is conclusory in nature, coming at the end of a standardized form and providing no detailed clinical findings to support it. Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986). At best, Dr. Van Houten could be considered a nonexamining physician. See Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); Lester, 81 F.3d at 830 (defining nonexamining physicians as "those who neither examine nor treat [Plaintiff]," but who review their file prior to offering an opinion). In light of the opinion from examining physician Dr. McIntire, the ALJ properly rejected Dr. Van Houten's conclusions. See Lester, 81 F.3d at 830 ("The opinion of an examining physician is...entitled to greater weight than the opinion of a nonexamining physician."); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The ALJ's weighing of the medical evidence in this case was not in error.

On this record, there is no legal basis to disturb the ALJ's weighing of the medical evidence. Dr. McIntire, a board certified neurologist and an acceptable medical source offered an opinion about Plaintiff's condition and her functional capacity. Refusing to credit the opinion of a family nurse practitioner or the conclusory findings of a nonexamining physician was not error.

b. The ALJ Erred in his Finding that Plaintiff did not Suffer from the Severe Impairment of Fibromyalgia.

The ALJ did not find Plaintiff's fibromyalgia to be a severe impairment. AT 19. The ALJ stated that Plaintiff's complaints were not supported by the record as a whole and that there was a lack of physical findings or results of examinations documenting Plaintiff's condition. AT 19-20. This finding is in error as it applies neither the proper legal standard nor is it supported by substantial evidence in the record.

"Fibromyalgia is a form of rheumatic disease with no known cause or cure. The principal symptoms, which are entirely subjective, are pain and tenderness in muscles, joints and ligaments, but the disease is frequently accompanied by fatigue, sleep disturbances, anxiety, dizziness, irritable bowels and tension headaches." Walker v. American Home Shield Long Term Disability Plan, 180 F.3d 1065, 1067 (9th Cir.1999) (citing Arthritis Foundation Pamphlet,

Fibromyalgia 6-8 (1989)). "The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and . . . multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.  All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch." Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir.1996).

At step two of the sequential analysis, the ALJ found Plaintiff's fibromyalgia to be not severe because of the "lack of ongoing and significant objective clinical findings" in the record. AT 20. An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Given the nature of fibromyalgia, Plaintiff has produced significant medical evidence to meet the de minimis standard of step two.

Since her initial visit at the Sierra Clinic on December 30, 2003, Plaintiff has complained of symptoms consistent with fibromyalgia, including generalized pain and poor sleep. AT 166. In the eight months prior to the administrative hearing, Plaintiff was been repeatedly diagnosed with fibromyalgia. AT 196, 200, 206, 208. The physical therapist to whom Sierra Clinic referred Plaintiff also noted that her symptoms were consistent with fibromyalgia. AT 212.

The diagnosis of fibromyalgia was made by Ms. Martin, a registered nurse and family nurse practitioner. The ALJ considered Ms. Martin's opinion as to Plaintiff's functional

limitations, properly determining that this opinion had no weight when compared to the medical findings of the examining physician in the record. However, the ALJ's dismissal of her conclusion as to Plaintiff's functional capacity in no way detracts from the strength of the evidence of Plaintiff's fibromyalgia.

As discussed above, while not an acceptable medical source, Ms. Martin is a source for medical evidence. 20 C.F.R. § 416.913(d). Unlike other lay witnesses who may offer evidence of impairment, as a registered nurse and family nurse practitioner, Ms. Martin possesses additional skills in physical diagnosis, psycho-social assessment, and management of health and illness needs. CAL. CODE REGS. tit.xv, §1480(a). Requirements for becoming a nurse practitioner include holding an active nursing license and advanced training at the Master's Degree level. CAL. CODE REGS. tit.xv, §1482, 1484. Given Ms. Martin's qualifications, it is clear that her assessment of Plaintiff's condition provides the medical evidence necessary to support Plaintiff's allegations.

Furthermore, the ALJ fails to acknowledge that an acceptable medical source does opine that Plaintiff suffers from fibromyalgia. Dr. Van Houten endorsed Ms. Martin's conclusions. AT 222. While this is not sufficient evidence to confirm Dr. Van Houten as a treating source, as discussed above, it certainly qualifies him as a nonexamining source. See Holohan, 246 F.3d at 1202; Lester, 81 F.3d at 830 (defining nonexamining physicians as "those who neither examine nor treat [Plaintiff]," but who review their file prior to offering an opinion). It is clear that credible evidence of Plaintiff's fibromyalgia exists to withstand the screening function of the step two analysis.

The ALJ found Plaintiff's claim of fibromyalgia to be tainted by the lack of objective findings. However, requiring objective evidence of fibromyalgia is error because the disease "eludes such measurement." Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 108 (2nd Cir. 2003)(reversing and remanding for an award of benefits where the claimant was disabled by fibromyalgia)). When the proper de

minimis standard of step two is applied, the ALJ's conclusion that Plaintiff's fibromyalgia is not a severe impairment is not supported by substantial evidence in the record.

Under the diagnostic criteria as they exist, it is apparent that Plaintiff suffers from severe fibromyalgia. While fibromyalgia may manifest itself through generalized pain, sleep disturbance, fatigue, and stiffness, the critical inquiry is the presence of pain in at least 11 of 18 points when pressed firmly. See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004)(citing to Frederich Wolfe, et al., The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia, 33 Arthritis and Rheumatism (No. 2) 170-71 (February 1990)). The record establishes that Plaintiff experienced pain at all 18 pressure points. AT 207-08. At 14 points, Plaintiff rated her pain at a level of six or higher out of 10. AT 207.

In addition, the record of Plaintiff's treatment before her arrival at Sierra Clinic is notable for its lack of any other diagnosis. See Jordan, 370 F.3d at 872 (noting that fibromyalgia is diagnosed in part by administering objective tests that rule out other diseases). Treatment notes from Miner's Community Clinic in 2002 and 2003 show various ailments, including back and shoulder pain, AT 157, and back pain with radiculopathy, AT 154, 156, but offer no definitive diagnosis. The numerous x-rays, MRIs, and nerve conduction studies administered to Plaintiff during this time all came back normal. AT 121, 123, 125, 130, 134, 144-46, 149, 158; see also Jordan, 370 F.3d at 872 (noting that "objective signs, laboratory results, and x-ray results are generally negative" in those with fibromyalgia). The results so puzzled Plaintiff's treating physician at Miner's Community Clinic that, upon Plaintiff's final visit on July 24, 2003, the physician acknowledged that he did not "understand what is going on with her as all the testing [was] negative." AT 153.

These nonspecific results were repeated in other examinations conducted upon Plaintiff. Dr. McIntire, reported that Plaintiff complained of lower back pain, knee pain, and shoulder pain, yet his findings were normal. AT 117-18. Examining psychiatrist, Dr. Canty,

11

offered no mental diagnosis to explain Plaintiff's reported lower back pain, numbness in her legs, neck pain, and headaches. AT 161.

It is true that prior to her arrival at Sierra Clinic, Plaintiff did not consistently report the complete spectrum of symptoms consistent with fibromyalgia. Plaintiff did occasionally report chronic pain, AT 153, 154, as well as fatigue, AT 154. However, the lack of reporting of every symptom is not fatal to Plaintiff's claim as not every symptom associated with fibromyalgia is present in every person. Jordan, 370 F.3d at 872 (citing 1990 Criteria at 160, 170).

Furthermore, the ALJ also discounted Plaintiff's complaints of fibromyalgia because she had not been referred for specialized care. AT 20. This statement is false. Plaintiff was referred on June 2, 2004, to a rheumatologist at UC Davis. AT 201. On June 16, 2004, UC Davis responded that they could not accommodate Plaintiff because of a lack of space in their clinic. AT 199. Plaintiff testified to a pending referral to UC San Francisco. AT 237.

The ALJ is charged with fairly evaluating all of the evidence. Magallanes, 881 F.2d at 750. Included in this obligation is the responsibility to analyze, consider, and properly weigh the evidence that detracts from the ALJ's ultimate conclusion. Id. The failure to accurately evaluate the record in its entirety can be error. See Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998)(concluding that the failure to accurately paraphrase the record material was error); Holohan, 246 F.3d at 1203-05 (reversing adverse credibility finding where the ALJ selectively quoted doctor's records out of context). While seemingly minor, misstatements of fact about the evidence in the record undermine the ALJ's conclusions and do not provide to the substantial evidence necessary to support his findings.

The ALJ's reliance on a relatively normal physical examination Plaintiff had at Miner's Community Clinic on March 11, 2003, is not substantial evidence supporting the conclusion that Plaintiff's fibromyalgia is not severe. AT 20. During that evaluation, Plaintiff's back flexion was 90 degrees and her extension was 10 degrees, with negative straight leg raises

1  and normal reflexes.  AT 157.  However, physical examinations of persons suffering from
2  fibromyalgia will often yield normal results, including full range of motion and lack of swelling.
3  See Green-Younger, 335 F.3d at 108.
4  　　　　　In addition, the medical opinion of Dr. McIntire as well as the reports of treating
5  doctors at Miner's Community Clinic are dated when compared to the records offered by Sierra
6  Clinic.  Dr. McIntire's opinion was offered on November 16, 2002, nearly two years prior to the
7  administrative hearing.  AT 114.  Miner's Community Clinic stopped seeing Plaintiff on July 24,
8  2003.  AT 153.  In contrast, Sierra Clinic started treating Plaintiff on December 30, 2003, with
9  their last examination on November 8, 2004, just three days prior to the administrative hearing in
10 this case.  AT 193.
11 　　　　　Dr. McIntire's is also not the relevant specialist for evaluating claims of
12 fibromyalgia.  Dr. McIntire is a board certified neurologist.  The relevant specialty for
13 fibromyalgia is rheumatology.  Benecke, 379 F.3d at 594 n. 4.
14 　　　　　Based in part upon his evaluation of the medical evidence in the case, the ALJ
15 determined Plaintiff's residual functional capacity.  This assessment of Plaintiff's abilities
16 concluded that she could perform the full range of light work and a narrow range of medium
17 work.  AT 24.  However, as noted above, this assessment relied on incomplete, inaccurate, and
18 dated evaluations of Plaintiff's impairments.
19 　　　　　Evidence of disability is incomplete in this case.  Credible sources disagree about
20 Plaintiff's fibromyalgia.  On the one hand, Ms. Martin, an eminently qualified "other source"
21 with a long, ongoing relationship with Plaintiff diagnosed fibromyalgia.  This diagnosis was
22 sufficiently credible and trustworthy that a licensed physician, Dr. Van Houten, endorsed it.  AT
23 222.  In addition, a physical therapist agreed that Plaintiff suffered symptoms consistent with
24 fibromyalgia.  AT 212.  On the other hand, a board certified neurologist, Dr. McIntire, found no
25 significant impairments during a one-time examination nearly two years prior to the
26 administrative hearing.

If the evidence of disability is insufficient or inconsistent, the ALJ is obligated to continue the investigation. 20 C.F.R. § 416.927(c)(3). Obtaining a complete medical record is critical to evaluating Plaintiff's residual functional capacity. 20 C.F.R. § 416.945(a)(3). The ALJ must fully develop the medical record. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996). It is apparent that he has not done so in this case.

When the consistency of Plaintiff's complaints are considered, particularly in light of the recent opinions from Sierra Clinic, it cannot be said that the ALJ has discharged his duty to fully develop the record. 20 C.F.R. § 416.919a(b)(1), (4); see Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001)(citing Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996)("An ALJ must order a consultative examination when such an evaluation is necessary to enable the ALJ to make the disability determination.")) Remand is necessary in order to permit the ALJ to obtain the necessary medical opinion that will permit him to accurately determine the nature and extent of Plaintiff's disability. This may be accomplished through subpoenaing Plaintiff's physicians, submitting questions to Plaintiff's physicians, or ordering of a consultative examination by a specialist in rheumatology. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

When that additional evidence is received, the sequential analysis should be continued from step two. The evidence in the record at this time documents clearly that Plaintiff suffers from the severe impairment of fibromyalgia; however, this conclusion may change with additional evidence from credible sources. Furthermore, as discussed in detail above, the ALJ properly weighed the medical evidence in this case based upon the record as it existed at the time of his findings. Such weighing may not be appropriate upon the introduction of the additional evidence. Accordingly, upon receipt of the additional evidence, the ALJ should thoroughly assess the medical evidence and properly weigh all of the medical opinions contained in the record prior to reaching his findings.

/////

/////

c. The ALJ's Assessment of Plaintiff's Credibility was in Error.

The ALJ found Plaintiff's subjective complaints of pain and impairment to be less than fully credible. AT 24. The ALJ noted that the objective medical evidence, Plaintiff's testimony, an absence of treatment, and Plaintiff's daily activities failed to support any conclusion that Plaintiff's disabilities were as severe as alleged. This finding was in error.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee, 94 F.3d at 522. If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own

1  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
2  substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).
3  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
4  reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v.
5  Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

6        The ALJ noted the lack of objective medical evidence to support many of
7  Plaintiff's complaints. AT 23. Indeed, the ALJ stated that a "[plaintiff] must produce medical
8  evidence of an underlying impairment that is reasonably likely to be the cause of her alleged
9  impairments." Id. This finding both misstates the law and misapplies the facts in this case.

10        Discrediting a plaintiff's subjective complaints solely because of a lack of
11  objective evidence to confirm a finding of fibromyalgia is error. See Benecke, 379 F.3d at 594;
12  Green-Younger, 335 F.3d at 108. Because the disease eludes measurement, objective evidence
13  to confirm a diagnosis may not be available. Benecke, 379 F.3d at 594. The disease is one of
14  exclusion, not inclusion, and is generally diagnosed only after all other options have been
15  exhausted. See Jordan, 370 F.3d at 872.

16        To the extent such evidence is available in cases of fibromyalgia, the record
17  contains abundant objective evidence consistent with Plaintiff's complaints. Sierra Clinic
18  diagnosed Plaintiff with fibromyalgia. AT 196, 200, 206, 208, AT 222. Examination of the 18
19  pressure points indicated moderate to severe pain in all areas. AT 207. The physical therapist
20  noted Plaintiff's symptoms were consistent with fibromyalgia. AT 212. Plaintiff complained to
21  all of her doctors of various and chronic pain, AT 153, 154, 196, 200, 205, in addition to specific
22  complaints of joint pain, AT 124, and fatigue or disturbed sleep, AT 154, 196, 204, 205, 216.

23        Plaintiff consistently sought relief for these symptoms. From March 11, 2003,
24  until her administrative hearing, Plaintiff saw health care professionals at Miner's Community
25  Clinic or Sierra Clinic with symptoms consistent with fibromyalgia no fewer than 24 times. AT
26  /////

1   153-157, 193-218.  The ALJ's finding that Plaintiff's credibility is undermined by the significant
2   gaps in treatment is simply not supported by the evidence in the record.
3           The ALJ also found Plaintiff's credibility affected by the lack of any referral to a
4   specialist or pain clinic.  AT 23.  However, as noted above, this statement is not correct.  The
5   ALJ was referred by Sierra Clinic to a rheumatology specialist at UC Davis, who declined to
6   accept Plaintiff because of a lack of space.  AT 199, 201; see Benecke, 379 F.3d at 594 n. 4
7   (stating that rheumatology is the relevant specialty of fibromyalgia).
8           The ALJ noted that Plaintiff was able to pursue many daily activities, including
9   housework, cooking, vacuuming, personal finance, and interaction with her sons and boyfriend.
10  AT 23.  However, Plaintiff's ability to engage in some daily activities does not compromise her
11  subjective complaints of pain.  See Benecke, 379 F.3d at 594; Vertigan v. Halter, 260 F.3d 1044,
12  1050 (9th Cir. 2001); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) (holding that one need not
13  be "utterly incapacitated" in order to be disabled).  In reaching this conclusion, the ALJ relied
14  upon the report Plaintiff made to Dr. McIntire, AT 115, and Dr. Canty, AT 162, ignoring more
15  recent evidence in the record documenting the significant limitations on Plaintiff's daily
16  activities.  Furthermore, the ALJ failed to adequately explain how these activities were consistent
17  with those required for productive work.
18          Where the ALJ fails to offer any reasons for discrediting a plaintiff's subjective
19  pain testimony, such testimony will be credited as true.  See Varney v. Sec'y of Health and
20  Human Serves., 859 F.2d 1396, 1401 (9th Cir. 1988).  However, when the ALJ offers reasons,
21  but those reasons are not supported by the evidence in the record, such crediting of the evidence
22  may not be appropriate.  Id. at n.5 ("The Eleventh Circuit also holds that pain testimony is
23  accepted as true if the Secretary gives specific reasons for rejecting it but those reasons are not
24  supported by substantial evidence. . . .  While these rules also appear sensible and salutory, we
25  need not decide here whether to adopt them[.]")  The ALJ offered reasons for discrediting
26  Plaintiff's impairments not supported by substantial evidence in the record.  Given the need to

remand for additional evidence, reconsideration of Plaintiff's credibility in light of that additional evidence is appropriate. While the ALJ may ultimately determine that Plaintiff's subjective complaints of pain are not credible, he should do so based upon the proper legal standard and the complete medical record.

For the foregoing reasons, the court recommends that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment be denied;

2. The Commissioner's cross motion for summary judgment be denied; and

3. This matter be remanded for further proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 6, 2006.

UNITED STATES MAGISTRATE JUDGE

13
Hardesty.f&r.ss.wpd